In the District Court of the United States

For the District of South Carolina

CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| Days Inns Worldwide, Inc., a Delaware Corporation, | ) ) ) | C.A. No. 9:07-0053-MBS-GCK |
| **Plaintiff/Counterclaim Defendant,** | ) ) ) ) | |
| vs. | ) ) ) | |
| **252 Hotel, LLC, a** South Carolina Limited Liability Company, **Steven Witmer,** a California resident, and **Robin Witmer,** a California resident, | ) ) ) ) ) | **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| **Defendants/Counterclaim Plaintiffs,** | ) ) ) | |
| **Steven Witmer** and **Robin Witmer,** | ) ) ) | |
| **Third Party Plaintiffs,** | ) ) ) | |
| vs. | ) ) ) | |
| **Troy A. Titus,** | ) ) ) | |
| **Third Party Defendant.** | ) ) ) | |
| Defendant. | ) ) | |

## I. INTRODUCTION

This action was filed by the Plaintiff Days Inns Worldwide, Inc. ("DIW"), a Delaware

corporation. The Defendant 252 Hotel LLC ("252 Hotel"), a South Carolina limited liability

company, is a former franchisee of DIW which operated a Days Inn guest lodging facility (the

Page 1 of 16

"Facility") in Manning, South Carolina. The Defendants Steven Witmer ("Mr. Witmer") and Robin Witmer ("Mrs. Witmer") are California residents. Mr. and Mrs. Witmer (collectively, the "Witmers") are proceeding *pro se* in this matter.[1]

This matter is before the court pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., which authorizes Magistrate Judges to review all pretrial proceedings involving litigation involving individuals proceeding *pro se*. DIW has filed a motion for summary judgment. [56] Mr. Witmer and Mrs. Witmer have filed a motion to dismiss this action. [88] As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

## II. THE *PRO SE* LITIGANTS

The Defendants Mr. Witmer and Mrs. Witmer are *pro se* litigants, and thus their pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* pleadings nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the *pro se* litigant could prevail, it should do so, but a district court may not rewrite a petition to include claims or defenses that were never presented.

---

[1]     Mr. and Mrs. Witmer initially were represented by counsel, but that attorney withdrew by motion granted on September 21, 2007. [44; 45]

*Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the *pro se* litigants' legal arguments for them (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. BACKGROUND TO THE CASE

### A. The License Agreement Between DIW and 252 Hotel

On March 31, 2004, DIW and 252 Hotel entered into a license agreement (the "License Agreement") whereby DIW licensed and franchised the "Days Inn" System to 252 Hotel to operate the Facility. (*See* Complaint [1] at ¶ 9 *and* License Agreement, attached as Exhibit A [1-2] to Complaint). The License Agreement was executed by "Stephen Witmer, Manager" on behalf of the licensee, "252 Hotel, LLC". (*See* Exhibit A, License Agreement at p. 22).[2] Schedule B to the License Agreement names Mr. Witmer and Mrs. Witmer as equal members of 252 Hotel, each holding a 50% ownership interest as an equity member of the limited liability company. (*See* License Agreement at Schedule B, p. 32). The terms of the License Agreement



---

[2]    The court notes that the signature page is numbered "22," but the pages preceding it are numbered 1-24. *See* Exhibit A to Complaint.

obligated 252 Hotel, among other things: to operate the Facility as a Days Inn® facility for a

fifteen-year term; to make certain periodic payments to DIW for royalties, reservation system

user fees, taxes, and other fees (collectively, the "Recurring Fees"); and not to assign, transfer, or

convey its interest in the Facility, except with DIW's prior written consent. (Complaint ¶¶ 10-12;

License Agreement §§ 7, p. 10; §§ 9.1, 9.3, 9.5, pp. 11-12). Under the terms of the License

Agreement, any attempted transfer, assignment, or conveyance not in accordance with the

License Agreement would be void as between DIW and 252 Hotel, result in a default under the

License Agreement, and would give DIW the right to terminate the License Agreement. (License

Agreement §§ 11.1, 11.2 at p. 13; *see also* Complaint at ¶ 12). The License Agreement provided

that in the event of its termination, 252 Hotel would pay certain liquidated damages to DIW

(License Agreement § 12.1 at p. 15) and that the non-prevailing party would "pay all costs and

expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this

[License] Agreement or collect amounts owed under this [License] Agreement." (Complaint at

¶¶ 14-16, License Agreement § 17.4, at p. 20).

### B. The Guaranty

DIW contends that a guaranty ("Guaranty"), effective as of the date of the License

Agreement, was executed by Mr. Witmer and Mrs. Witmer as guarantors of 252 Hotel's



obligations under the License Agreement. (*See* Complaint at ¶ 17 and Guaranty attached as

Exhibit B thereto). The terms of the Guaranty provided, among other things, that upon a default

under the License Agreement, Mr. Witmer and Mrs. Witmer would "immediately make each

payment and perform or cause [252 Hotel] to perform, each unpaid or unperformed obligation of

[252 Hotel] under the [License] Agreement." (*See* Complaint at ¶ 18 and Guaranty attached as Exhibit B thereto).

DIW contends that at some time in August 2005, 252 Hotel assigned, transferred, or conveyed its interest in the Facility without DIW's prior written consent and discontinued operating the Facility as a Days Inn® facility, in violation of the License Agreement. (Complaint at ¶¶ 20-22). On August 3, 2005, DIW wrote to Jack Rochevot ("Rochevot") in Chesapeake, Virginia, who had been listed in the Licensing Agreement as the person who was to receive notices on behalf of 252 Hotel, to inform him that (1) DIW had received information that 252 Hotel no longer had control of the Facility, and (2) the License Agreement would terminate on August 10. 2005, unless DIW was informed otherwise. (*See* Exhibit C to Complaint; *see also* Licensing Agreement at § 17.3 at p. 19). On August 25, 2006, DIW again wrote to Rochevot, notifying him that because 252 Hotel had relinquished control of the Facility to Troy Titus and Charlie Dombeck, the License Agreement was automatically terminated as of August 10, 2005. DIW demanded payment of liquidated damages and other fees, including Recurring Fees, as more specifically set forth in the License Agreement, and DIW also provided notice and demand for payment under the Guaranty. DIW terminated the License Agreement on the grounds that 252 Hotel was in default under the terms thereof. (*See* Exhibit D to Complaint). DIW alleges that 252 Hotel, Mr. Witmer, and Mrs. Witmer refused to pay the amounts owed to it. (Complaint ¶¶ 29, 37, 41, 45).



## IV. PROCEDURAL HISTORY

On January 5, 2007, DIW filed the instant action against 252 Hotel, and against Mr. Witmer and Mrs. Witmer as guarantors, seeking to recover the amounts owed under the terms of

the License Agreement and the Guaranty. [1] Mr. Witmer and Mrs. Witmer were served with

process on January 28, 2007.[3] [7] On March 12, 2007, counsel for the Witmers filed an answer

generally denying DIW's allegations and asserting, among other defenses, that the court lacked

personal jurisdiction over them. (Answer [6] at ¶ 8; *see also* Fed.R.Civ.P. 12(b)(2)).

On May 23, 2007, the Witmers, through counsel, filed an amended answer, again alleging

that the court lacked personal jurisdiction over them, and as a further defense and by way of

counterclaim, sought equitable rescission of any agreements upon which DIW's claims were

based on the grounds that Troy A. Titus, Esq. ("Titus"), a Virginia attorney, had acted as a

purported agent for Mr. Witmer and Mrs. Witmer. (Amended Answer [28] at ¶¶ 11-13). Mr.

Witmer and Mrs. Witmer also alleged a third-party complaint against Titus based upon breach of

fiduciary duty, misrepresentation, and ultra vires actions. (Amended Answer [28] at ¶¶ 18-21).

On June 14, 2007, DIW filed a reply to the counterclaim, denying the allegations

contained therein. [33] Titus was served with the Witmers' amended answer, but did not file a

responsive pleading. [34] Discovery was conducted by DIW's counsel with respect to the

authenticity of the Witmers' signatures.

On August 30, 2007, the Witmers wrote a letter to their local counsel informing him they

wished to terminate his services. [45 at p. 1] Thereafter, the Witmers' counsel filed a motion to

withdraw, which was granted by the Honorable David C. Norton on September 21, 2007. [44;

45] On September 25, 2007, DIW's claims against 252 Hotel were disposed of when the district

court entered a default judgment against 252 Hotel, and in favor of DIW, in the amount of

---

[3]     The Witmers contend that they were not served until June, 2007. *See, e.g.*, [85; 88]. A
review of the docket sheet indicates they were served in January 2007. [7]

$206,239.19. [49]  Thus, as of that date, the sole remaining question in the case became whether the Witmers were liable to DIW under the terms of the Guaranty.

On October 5, 2007, the case was reassigned to the Honorable Margaret B. Seymour. [53]  On October 12, 2007, the Court entered an Order [54] instructing the Witmers to inform the Court no later than October 24, 2007 as to whether they intended to proceed *pro se* or to name substitute counsel; otherwise, the Witmers may be subject to default judgment pursuant to Rule 55(a).  The Witmers did not comply with the court's October 12, 2007 Order.

On November 27, 2007, DIW filed a motion for summary judgment, seeking judgment against the Witmers as guarantors, or in the alternative, default judgment against the Witmers on the grounds that they failed to comply with Judge Seymour's October 12, 2007 order.  [56]  On January 10, 2008, a *Roseboro*[4] order was issued, which inadvertently stated that the Plaintiff in the instant case was without counsel.  [76]  The Witmers wrote a letter to Judge Seymour, which was filed on January 11, 2008, in which they stated they "know nothing about 252 Hotel, LLC, or any Days Inn franchise or guarantee" and "are not even sure why we are being sued in this case. ([78] at p. 2)  The Witmers further stated that they "are not, nor ever represented ourselves to be 252 Hotel, LLC, or ever entered into any agreements with Days Inn."  ([78] at p. 3).



On January 24, 2008, the undersigned United States Magistrate Judge was assigned to handle pre-trial matters in this case, to include DIW's motion for summary judgment.  [81]  On February 1, 2008, the undersigned issued an order to the Witmers which instructed them as to certain procedures applicable to them as *pro se* litigants.  [83]  The Witmers again wrote to the court by letter filed on February 12, 2008, questioning the court's *Roseboro* order, which stated

---

[4]      *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

that the Plaintiff was proceeding *pro se.* In response, the undersigned issued an amended

*Roseboro* order February 13, 2008, which directed the Witmers, as *pro se* defendants, to respond

to DIW's motion for summary judgment by March 18, 2008. [86] The Witmers responded by

timely filing a letter with the court which was construed as a motion to dismiss DIW's

complaint.[5] [88] DIW filed its response on March 28, 2008. [89] Accordingly, this case is ripe

for review.

## V. DISCUSSION

### A. Whether the Court has Personal Jurisdiction over the Witmers

DIW alleged in its complaint that the court "has personal jurisdiction over Mr. Witmer

and Ms. Witmer because they have conducted business and entered into written agreements to be

performed in this jurisdiction, including without limitation agreements related to the operation of

a guest lodging facility in this jurisdiction." (Complaint [1] at ¶ 6). The Witmers deny that the

court has personal jurisdiction over them. (Amended Answer [28] at ¶ 6).

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court

lacks the requisite personal jurisdiction over the defendant. When personal jurisdiction is

challenged by the defendants, as here, the plaintiff bears the burden of proving that the

defendants are subject to personal jurisdiction in the state of South Carolina. *Tetrev . Pride

Intern., Inc.,* 465 F.Supp.2d 555, 558 (D.S.C. 2006) (*citing In re Celotex Corp.,* 124 F.3d 619,

628 (4th Cir. 1997)). When the court decides a pre-trial personal jurisdiction dismissal motion

without an evidentiary hearing, the plaintiff need only prove a *prima facie* case of personal

---

[5]    The Witmers' *pro se* motion to dismiss was filed in response to DIW's motion for summary judgment. Therefore, DIW's argument that the Witmers failed to abide by the terms of the Scheduling Order is without merit.

jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). In determining the existence of personal jurisdiction, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the plaintiff's favor. *See, e.g., Meier ex. Rel. Meier*, 288 F.3d at 1269 ("[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff"); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994) (on a motion to dismiss, the court is charged with "taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff."); *Precept Med. Products, Inc., v. Klus*, 282 F.Supp.2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts"). Thus, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d at 676.



To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *See Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *See Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000) (citation omitted). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due

Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002), *citing Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F.Supp. 260, 265 (D.S.C. 1995). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998) (internal quotation marks omitted).

Under the constitutional inquiry, a court has personal jurisdiction over those persons with sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). The minimum contacts prong is satisfied either through specific or general jurisdiction. *Fortis Corporate Ins. v. Viken Ship Management*, 450 F.3d 214, 218 (6th Cir. 2006). "General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum state wholly unrelated to any contact it has with that forum, exists only where the foreign defendant's in-state activities amount to 'continuous and systematic' contact with the state." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Thus, to establish general jurisdiction over a nonresident defendant, the court must determine if the defendant's activities have been "continuous and systematic." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) (*quoting Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. at 416. Section 36-2-802 of the South Carolina Code authorizes general jurisdiction over persons who do business or maintain a principal place of business in this state. *Springs Industries, Inc. v. Gasson*, 923 F.Supp. 823, 828 (D.S.C. 1996). As the United States Supreme Court has reasoned, where the defendant "has availed himself of



the privilege of conducting business [in the forum state], and because his activities are shielded

by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to

require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475-476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In the present case,

there is no evidence to support a conclusion that the Witmers have engaged in "continuous and

systematic" activities in the state of South Carolina. Moreover, DIW has not made such an

assertion. There is no evidence that the Witmers have an "enduring relationship" with South

Carolina, or that they have any connection to, or have engaged in any activities in South

Carolina. The Witmers state they "know nothing about any property, nor did we ever, in any

way, give our guarantee for any property." [78] There is nothing before the court to suggest that

the Witmers had any expectation that they would be subject to suit in South Carolina on any

claim. Furthermore, they have informed the court that they would suffer grave inconvenience

were they to be forced to defend a suit in South Carolina.[6] "The essence of the issue [is] one of

general fairness to the [defendant]." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445,

72 S.Ct. 413, 96 L.Ed. 485 (1952). Thus, the court finds that it does not have general jurisdiction

over the Witmers.

The next question, then, is whether the court has specific jurisdiction over the Witmers.

South Carolina's long-arm statute, S.C. Code Ann. § 36-2-803, confers specific jurisdiction over

---

[6] In their *pro se* motion to dismiss, the Witmers denied entering into or ever considering entering in to any agreement with DIW, they have had no communications with DIW and first learned of the present action when served with process. [88; see also [78] at pp. 2-3]. For the past thirteen years, the Witmers have been domiciled at the same residence in Laguna Niguel, California. [85] Mr. Witmer is 54 years old and permanently partially paralyzed from a work related accident. ([78] at p. 1, 3). He is unable to walk any distance and unable to travel alone. ([78] at p. 3). Mr. and Mrs. Witmer are unable to travel to South Carolina because they have four school-aged children. (*Id.*).

nonresident defendants in certain instances, including transacting business and committing a

tortious act in the state.  Specific jurisdiction subjects the defendant to "suit in the forum state

only on claims that arise out of or relate to a defendant's contacts with the forum." *Helicopteros*

*Nacionales,* 466 U.S. at 414; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. at 472, 105

S.Ct. 2174.  Absent traditional bases for personal jurisdiction (physical presence, domicile, or

consent), due process is satisfied when a defendant has minimum contacts with the forum "such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *Int'l Shoe Co.*, 326 U.S. at 316.  A defendant has minimum contacts with a state when

"the defendant's conduct and connection with the forum state is such that he should reasonably

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S.

286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  Minimum contacts must be based on "some act

by which the defendant purposefully avails itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at

475, 105 S.Ct. 2174.  "[T]he level of 'minimum contacts' necessary to confer specific

jurisdiction is significantly lower than that required for general jurisdiction." *ESAB Group, Inc.*

*v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998).

Once minimum contacts have been established, the court next must determine if the

assertion of such jurisdiction comports with due process, so as to not offend the notions of fair

play and substantial justice. *Fallon Luminous Prod. Corp. v. Multi Media Electronics, Inc.*, 343

F.Supp.2d 502, 504 (D.S.C. 2004); *Burger King*, 471 U.S. at 476.  In evaluating the second

prong of the test, the court must consider the burden on the defendant, the forum state's interest

in adjudicating this action, the plaintiff's interest in obtaining convenient and effective relief, the

interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest among the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction:  (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claim arises out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Christian Science Board of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001), (*citing Helicopteros*, 466 U.S. at 415-16, 104 S.Ct. 1868, and *Burger King Corp.*, 471 U.S. at 472, 476-77, 105 S.Ct. 2174).



The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated contacts," or of the "unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174.  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. *Id.* (emphasis in original) (*citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).  Although the test for purposeful availment can be somewhat imprecise, significant factors typically include:  the defendant's physical presence in the forum state, the extent of negotiations in the forum state, the extent to which the contract was to be performed in the forum state, and who initiated the relationship. *Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md. 2000).

It appears to the court that the Plaintiff has not established that either Mr. Witmer or Mrs. Witmer have had sufficient contacts with South Carolina to subject them to personal jurisdiction in this state. It is undisputed that the Witmers reside in and are domiciled in California. (Amended Answer [28] at ¶¶ 3-4). Mr. Witmer and Mrs. Witmer have stated that they have never been to South Carolina ([78] at p. 2) and their execution of any documents occurred either via facsimile or through the mail. ([78] at p. 1) They either faxed or mailed these documents to their attorney, Troy Titus, who "initiated" this set of transactions, as the Witmers have stated they "retained Troy Titus for the sole purpose of establishing a Revocable Living Trust for our family." [88]

Furthermore, the record does not indicate that Mr. Witmer or Mrs. Witmer has taken advantage of any privilege to conduct activities in South Carolina. Indeed, the Witmers have stated that they "know nothing about 252 Hotel LLC, or any Days Inn franchise or guarantee." ([78] at p. 2).[7] In addition, they "have never had any communication with Days Inn, or any of their associated companies, in any form whatsoever[,]" and they "know nothing about any property, nor did we ever, in any way, give our guarantee for any property." ([78] at p. 2). Finally, the Witmers state: "We are not, nor ever represented ourselves to be 252 Hotel, LLC, or ever entered into any agreements with Days Inn[.]" ([78] at p. 3). They have never seen any correspondence between themselves and Days' Inn. ([78] at p. 3).

As discussed above, DIW has the burden of establishing grounds for the Court to exercise personal jurisdiction over the Witmers. Here, DIW has failed to make a prima facie showing of

---

[7]    The court is aware that the Witmers' letter filed on January 11, 2008 was not filed under penalty of perjury.

facts sufficient to establish personal jurisdiction over Mr. Witmer and Mrs. Witmer. Therefore, the court recommends that this action be dismissed as against Mr. Witmer and Mrs. Witmer, because there is insufficient evidence to support its exercise of general or specific jurisdiction over these defendants.

## CONCLUSION

For the foregoing reasons, it is recommended that **Plaintiff's Motion for Summary Judgment [56] be denied and this action be dismissed for lack of personal jurisdiction over the Defendants Mr. Witmer and Mrs. Witmer.**

George C. Kosko
United States Magistrate Judge

July 17, 2008
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).