IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Days Inn Worldwide, Inc., a Delaware Corporation, | ) ) ) C/A No.: 2:07-53-MBS |
| Plaintiff/Counterclaim Defendant | ) ) ) |
| vs. | ) **O R D E R** ) ) |
| 252 Hotel, LLC a South Carolina Limited Liability Company, Stephen Witmer, a California resident, and Robin Witmer, a California resident, | ) ) ) ) ) |
| Defendants/Counterclaim Plaintiffs, | ) ) ) |
| Stephen Witmer, and Robin Witmer, | ) ) ) |
| Third Party Plaintiffs | ) ) |
| vs. | ) ) ) |
| Troy A. Titus, | ) ) |
| Third Party Defendants | ) ) |

## I. PROCEDURAL HISTORY

On January 5, 2007, Plaintiff Days Inn Worldwide, Inc., ("DIW") filed a complaint against

252 Hotel, LLC ("252 Hotel"), Steven Witmer, and Robin Witmer seeking to recover the amounts

owed under a license agreement ("License Agreement") executed by 252 Hotel and guaranteed by

the Witmers.  Pl.'s Compl.  Mr. and Mrs. Witmer were served with process on January 28, 2007.

Entry Number 7.  The Witmers, who were represented by counsel, filed an Answer on March 12,

2007 generally denying the allegations of the complaint and claiming, among other defenses, that this court lacked personal jurisdiction over them. Answer of Steven Witmer and Robin Witmer. An amended answer was filed on May 23, 2007, in which the Witmers added a counterclaim seeking equitable rescission of the License Agreement. The Witmers also asserted a third-party complaint against Troy A. Titus, Esquire ("Titus"), who allegedly purported to be the Witmers' agent and acted on their behalf without their approval. Am. Answer and Counterclaim of Steven Witmer and Robin Witmer and Third Party Compl. 2. The third-party complaint is based upon breach of fiduciary duty, misrepresentation, and ultra vires actions. Id. at 3.

DIW filed an answer to the counterclaim on June 14, 2007. Entry Number 33. Counsel for the Witmers filed a motion to withdraw, which was granted by the court on September 21, 2007. Entry Number 45. Thus, the Witmers are no longer represented by counsel.

On September 25, 2007, a default judgment was entered against 252 Hotel, in favor of DIW, for $206,239.19. Entry Number 49. On November 27, 2007, DIW filed a motion for summary judgment. Entry Number 56. On January 10, 2008 an order was issued pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).[1] Entry Number 76. On January 11, 2008, the Witmers submitted a letter to the court in which they claimed ignorance over all aspects of this case and asserted that they were not affiliated with 252 Hotel in any respect. Entry Number 78. After being told by the Magistrate Judge about the possible penalties associated with not responding to DIW's motion to dismiss, the Witmers submitted another letter, on March 17, 2008, which was construed by the Magistrate Judge as both a response to DIW's motion and a motion to dismiss. Entry Number

---

[1] The Roseboro Order mistakenly named Plaintiff as the *pro se* party. This was corrected by an amended Roseboro Order issued by the Magistrate Judge on February 13, 2008. Entry Number 86.

2

88.  DIW filed a response on March 28, 2008.  Entry Number 89.

On July 18, 2008, the Magistrate Judge issued his Report and Recommendation, finding that this court lacked personal jurisdiction over the Witmers.  Entry Number 94.  DIW filed an Objection to the Report and Recommendation on July 31, 2008.  Entry Number 97.

## II.  STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

## III.  FACTS

The facts are set out in detail in the Report and Recommendation and shall only be summarized briefly here.  On March 31, 2004, DIW and Defendant 252 Hotel entered into a License Agreement in which DIW licensed and franchised the "Days Inn" hotel system to 252 Hotel for the purposes of operating a guest lodging facility in Manning, South Carolina.  Pl.'s Compl. ¶ 9.  As part of this agreement, 252 Hotel agreed to operate the facility as a Days Inn guest lodging facility for fifteen years, to make periodic payments for an assortment of fees, and to not transfer, assign, or convey its interest in the facility without DIW's prior written consent.  Id. at ¶¶ 10-12.  A violation of the License Agreement, by attempting to transfer assign, or convey without the necessary authorization, would give DIW the right to termination and would require 252 Hotel to pay

3

liquidated damages. License Agreement, attached as Exhibit A §§ 11.1, 11.2, 12.1. The non-prevailing party is also required to pay all costs and expenses (including reasonable attorneys' fees) associated with enforcing the Agreement. Id. at § 17.4. The License Agreement was executed by "Stephen Witmer, Manager" on behalf of "252 Hotel, LLC." Id. at 22.[2] Per the Agreement, Mr. Witmer and Mrs. Witmer would each be an equity member in the LLC and hold a fifty percent ownership interest. License Agreement at Schedule B 32.

DIW maintains that Mr. and Mrs. Witmer also executed a guaranty effective the date of the License Agreement that made the Witmers guarantors of 252 Hotel's obligations under the Agreement. Guaranty as attached to Exhibit B. The guaranty required that if there was a default in the Agreement, the signatories would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the Agreement." Id.

It is alleged that in August 2005, 252 Hotel violated the terms of the License Agreement by assigning, transferring, conveying, or pledging its interest in the facility without DIW's consent. Pl.'s Compl. ¶¶ 20-22. As a result, the License Agreement was terminated and DIW demanded payment in the form of liquidated damages and fees. Id. at ¶¶ 23-24. DIW claimed that both 252 Hotel and the Witmers refused to pay any damages or fees. Id.

IV. DISCUSSION

FED. R. CIV. P. 12(b)(2) allows for dismissal of an action where the court lacks the personal jurisdiction necessary over a defendant. See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003). The plaintiff has the burden of proving that the

---

[2] The court notes that there is a pagination problem in the License Agreement, as the signature page is numbered "22" but both the preceding and following pages are numbered "23."

4

defendant is subject to the personal jurisdiction of a court in South Carolina.  Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993).  When this question is adjudicated without an evidentiary hearing, the plaintiff need only make a *prima facie* case of personal jurisdiction.  Combs v. Bakker, 886 F.2d 673, 675 (4th Cir. 1989).  In deciding whether this standard has been met, the court must view all disputed facts and take all reasonable inferences in favor of the plaintiff.  Carefirst of Maryland, Inc., 334 F.3d at 396.

The Fourth Circuit has set forth a two-step analysis to determine whether personal jurisdiction exists over non-resident defendants.  See Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).  The first step requires this court to ensure that jurisdiction is "authorized by the long-arm statute of the forum state."  Id.  The second step is to ensure that exercising personal jurisdiction does not run afoul of the due process requirements of the Fourteenth Amendment.  Id.  In South Carolina, the state's long arm statute has "been interpreted to reach the outer bounds permitted by the Due Process Clause."  ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).  As such, the two-step process is collapsed as "the two inquiries essentially become one."  Id. (quoting Stover v. O'Connell Associates, Inc., 84 F.3d 132, 135-36 (4th Cir. 1996)).[3]

Under the constitutional inquiry, a court has personal jurisdiction of those who have formed sufficient "minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310

---

[3]DIW objects to the Report and Recommendation by claiming that the conduct of the Witmers falls within the purview of the South Carolina long arm statute.  Entry 97, p. 4.  But the Magistrate Judge correctly ignored this issue, since the two pronged personal jurisdiction test has been merged into a due process analysis.

5

(1945) (citations omitted). Minimum contacts can be met either through specific or general jurisdiction. See Autoscribe Corp. v. Goldman and Steinberg, 47 F.3d 1164, *5 (4th Cir. 1995).

General jurisdiction requires the foreign defendant to have in-state activities that are "continuous and systematic" with the forum. Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction, a less arduous standard,[4] provides that the minimum contacts of Int'l Shoe are met when a defendant's contacts are as such that he should "reasonably anticipate being haled into [the forum's] court." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Fourth Circuit has developed a three-part test to determine whether a particular action is constitutionally within the specific jurisdiction of the court. First, the court must determine to what extent did defendants "purposely avail" themselves of the privileges of conducting activities in the forum state, and thus invoke the protection of state law. Christian Sci. Bd. of Dirs. of the First Church of Christ, 259 F.3d at 216. The Supreme Court has explained that the "purposely availed" language exists to ensure that an individual is not haled into a foreign jurisdiction as a result of "'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Second, whether plaintiff's claim came from activities arising out of the particular forum state. Christian Sci. Bd. of Dirs. of the First Church of Christ, 259 F.3d at 216. The third and final prong is, whether the exercise of specific jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ, 259 F.3d at 216. The term "reasonable" has been found to include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the

---

[4] See ESAB Group, Inc., 126 F.3d at 623.

6

several States in furthering fundamental substantive social policies." Id. at 217 (quoting Burger King Corp., 471 U.S. at 477).

DIW asserts that the Magistrate Judge erred in determining that DIW had failed to meet its burden of proving that the court possesses personal jurisdiction over the Witmers. The court agrees.

In applying the test established in Christian Sci. Bd. of Dirs. of the First Church of Christ, the court first looks to see if the Witmers "purposely availed" themselves of the privilege of conducting activities in South Carolina. In their objection to the Report and Recommendation, DIW points to both the License Agreement with 252 Hotel signed by Steven Witmer and the personal guaranties signed by Steven and Robin Witmer. Entry Number 97, p. 7. The Fourth Circuit has previously found that the "mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum" State Bank of Alleghenies v. Hudnall, 62 F.3d 1415, *2 (4th Cir. 1995). However, in First American Bank of Virginia v. Kindschi, the Fourth Circuit upheld a trial court's finding of personal jurisdiction based in part on a guaranty of a business loan and the range of activities in the forum state that surrounded the loan. 813 F.2d 400, *6 (4th Cir. 1986). In this case, the guaranty, coupled with the License Agreement makes it impossible to argue that the Witmers only had an attenuated connection to South Carolina.

Further, the physical location of 252 Hotel was within the geographic borders of South Carolina. Accordingly, the Witmers' activities took place in the forum state.

Finally, the court looks to see if the extension of personal jurisdiction would be constitutionally "reasonable." DIW has stated a desire to obtain convenient and effective relief and there is likely a South Carolina interest in adjudicating this matter to create a deterrent against future acts of contractual malfeasance within its borders. The Whitmers assert that the extension of

personal jurisdiction would be too burdensome given their modest income, distance from South Carolina, and Mr. Witmer's diminished health. Although a burden on the Witmers does exist, the burden alone is not enough to overcome DIW's *prima facie* case for personal jurisdiction. The Fourth Circuit has recognized that "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome." ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002).

The court, finding personal jurisdiction exists, turns to the merits of DIW's motion for summary judgment. DIW asserts that the Witmers are liable under the guaranty.

FED. R. CIV. P. 56(c) establishes that summary judgment be granted if "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

DIW points to the deposition of the Witmers' own handwriting expert, Marvin Dawson, who concluded that the signatures on both the License Agreement and the guaranty were not forged but rather were authentic and were the Witmers' signatures. Dep. of Marvin H. Dawson, Jr., Entry Number 57, p. 22-37. This conclusion is not questioned by the Witmers.

The Witmers' counterclaim is improper because they present no evidence that DIW did anything unlawful or improper. The claim that signatures were forged by Titus are cast into doubt by the deposition of Dawson. Witmers' request for rescission is improper for rescission can only exist when the parties can be put "back in the same position they were in prior to the making of the contract." Jones v. Saxon Mortg., Inc., 537 F.3d 320, 326 (4th Cir. 1998). As the agreement has been terminated, it is impossible for DIW to be placed back in their previous position.

Due to their authentic signatures on the License Agreement, the Witmers are joint and severally liable for any damages recoverable from 252 Hotel. A default judgment of $206,239.19 has already been entered against 252 Hotel. Entry Number 49. Added to this figure are the attorneys' fees owed to counsel for DIW since the entry of the default judgment, which are provided for as litigation expenses in Section 17.4 of the License Agreement. Pl.'s Compl. ¶ 14-16. These additional litigation expenses amount to $20,397.09.[5] A total of $226,636.28.

## V.  CONCLUSION

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and Plaintiff's objections, this court declines to adopt the Magistrate Judge's Report and Recommendation. For the reasons set out hereinabove DIW's motion for summary judgment is granted and damages in the amount of $226,636.28 are to be assessed against the Witmers.

**IT IS SO ORDERED**.

s/Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 30, 2008

---

[5]Sum derived from the $11,844.06 owed Mark S. VanderBroek, Esquire and the $8,553.03 owed Morgan S. Templeton, Esquire. Entry Number 59, 70.

9